# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

**CIVIL ACTION NO. 12-591-DLB-HBG**

**JEFFREY S. GIBSON**                                                                 **PLAINTIFF**

**vs.**                      **MEMORANDUM OPINION AND ORDER**

**CELLULAR SALES OF KNOXVILLE, INC., et al.**              **DEFENDANTS**

                          \*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is presently before the Court on Plaintiff's Motion for Remand (Doc. # 6). This motion is fully briefed and thus ripe for review. (*See* Docs. # 13 & 17). For the reasons set forth below, the Court will **grant** the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiff's Amended and Restated Complaint (Doc. # 1-1 at 5-15) and are assumed to be true for the purposes of this motion. Plaintiff Jeffrey S. Gibson, a pilot, brought this action under the Tennessee Public Protection Act, T.C.A. § 50-1-304 and Tennessee common law against his former employers, Defendants Cellular Sales of Knoxville, Inc., Cellular Sales Management Group, LLC, Cellular Sales of Tennessee, LLC, and Csoki Aviation, Inc. for terminating his employment "in retaliation for refusing to participate in or to remain silent about his good faith belief that there were significant violations of federal regulations occurring regarding the operations of Defendant's aircraft." (*Id.* at ¶ 53).

1

During his employment, Plaintiff complained several times to Defendants' Flight Department Manager, Dennis Drone, Jr., that Defendants were violating federal aviation safety regulations. For instance, on one occasion, he informed Drone that one of Defendants' planes had an inoperable right fuel gauge and that it represented a hazardous condition. He also reported to Drone on or after September 13, 2011, that a different plane had a failed "lift dump system." The lift dump system is a function that "reduces roll out and braking distances when landing [an] aircraft." (*Id.* at ¶ 33). A failed lift dump system "causes the aircraft to significantly increase landing roll of the aircraft, requiring an extended runway in order to assure a safe landing." (*Id.* at ¶ 34). Drone, however, dismissed Plaintiff's repeated concerns and threatened his job.

The final confrontation between Plaintiff and Drone occurred on September 26, 2011, when Plaintiff was scheduled to pilot a flight from Knoxville, Tennessee to Rochester, New York. Fifteen minutes prior to the scheduled departure time, Drone boarded the plane and ordered Plaintiff to change the flight plan and land at the Canandaigua, New York airport instead. Plaintiff objected that the runway was too short and thus unsafe, particularly because of the problem with the plane's lift dump system. He informed Drone that attempting to land on Canandaigua's runway would therefore violate federal aviation regulations, and that as the "Pilot in Command," he would not fly the plane to that destination. Drone fired Plaintiff on the spot, and Plaintiff filed a complaint in state court. He later filed an Amended and Restated Complaint.

Plaintiff's Amended and Restated Complaint alleges that he was fired for complaining about or refusing to participate in Defendants' violation of the following Federal Aviation Administration safety regulations: 14 C.F.R. § 91.3(a) ("The pilot in command of

2

an aircraft is directly responsible for, and is the final authority as to, the operation of the aircraft."); 14 C.F.R. § 91.13(a) ("Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."); and 14 C.F.R. § 91.3 103 ("Each pilot in command shall, before beginning a flight, become familiar with all available information concerning that flight.").

Defendant removed the Amended and Restated Complaint to this Court on November 12, 2012 on the basis of 28 U.S.C. § 1441, and Plaintiff filed this Motion for Remand on December 12, 2012.

## II. ANALYSIS

The issue presented herein is whether the Court has federal question jurisdiction over Plaintiff's state law claims that he was wrongfully discharged under the Tennessee Public Protection Act, T.C.A. § 50-1-304(b), and Tennessee common law, for complaining about or refusing to participate in violations of Federal Aviation Administration ("FAA") regulations. Plaintiff argues the Court lacks federal question jurisdiction because the FAA regulations do not present a substantial question of federal law. He primarily reasons that the meaning of those regulations, even if disputed, is not an essential element of his claims. He explains that Tennessee law only requires him to show that he had reasonable cause to believe that Defendants violated the regulations—not that Defendants actually violated them. He therefore concludes that there is no substantial federal issue at stake. Secondarily, he asserts that Defendants' preemption argument is inapplicable and lacks merit. The Court agrees and will therefore grant the remand motion.

Under Title 28 United States Code Section 1441(a), a defendant may remove to federal district court any civil action filed in state court over which the district court has

3

original jurisdiction. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "[T]he scope of removal jurisdiction based on the existence of a federal question under [§ 1441(a)] is considered to be identical to the scope of federal question jurisdiction under § 1331." *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (citation omitted). Section 1331 provides that district courts have original jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The removing party carries the burden of demonstrating original jurisdiction. *Eastman*, 438 F.3d at 549. Section 1441(a) is strictly construed and all doubts resolved in favor of remand. *Id.*

"To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses[.]" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). There are three exceptions to the well-pleaded complaint rule: (1) the artful pleading doctrine; (2) the complete-preemption doctrine; and (3) the substantial-federal-question doctrine. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). In this case, Defendants only argue that the substantial-federal-question doctrine applies. As explained below, they also set forth a preemption argument, but they do not explicitly argue that the complete-preemption doctrine applies. The Court proceeds first to examine whether this case presents a substantial federal question.

As summarized by the Sixth Circuit, "[t]he substantial-federal-question doctrine has three parts: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities. *Mikulski*, 501 F.3d at 568 (citing *Grable & Sons*, 545 U.S. at 314)

4

(additional citation omitted). "A 'substantial' federal question involves the interpretation of a federal statute that actually is in dispute in the litigation and is so important that it 'sensibly belongs in federal court.'" *Eastman*, 438 F.3d at 552 (quoting *Grable & Sons*, 545 U.S. at 315).

Plaintiff's claim in this action is that he was wrongfully discharged under the Tennessee Public Protection Act, also known as the "Whistleblower Act," and under Tennessee common law. The Whistleblower Act provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." T.C.A. § 50-1-304(b). A claimant must prove four elements to prevail under the Act: "(1) the plaintiff was an employee of the defendant; (2) the plaintiff refused to participate in or remain silent about illegal activity; (3) the defendant employer discharged or terminated the plaintiff's employment; and (4) the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity." *Todd v. Shelby County*, No. W2012–00961–COA–R3–CV, 2012 WL 6727536 at *7-8 (Tenn. Ct. App. Dec. 27, 2012) (citing *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997)). Similarly, to establish a common law retaliatory discharge claim, the plaintiff must show: "(1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy." *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006).

5

As noted above, Plaintiff alleges that was fired for complaining about and refusing to participate in Defendants' violation of the following Federal Aviation Administration safety regulations:

> 14 C.F.R. § 91.3(a): The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of the aircraft.
>
> 14 C.F.R. § 91.13(a): Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.
>
> 14 C.F.R. § 91.3 103: Each pilot in command shall, before beginning a flight, become familiar with all available information concerning that flight.

Defendants argue that this case presents a substantial federal question because "resolution of this case depends entirely on interpretation of Federal Aviation Administration safety regulations" including "whether Plaintiff was the Pilot in Command on September 26, 2011 and whether Defendants' aircraft was safe and airworthy pursuant to [FAA regulations]" (Doc. # 13, at 7, 11). The Court disagrees. As Plaintiff points out, resolution of his claims does not require the finder of fact "to determine that federal regulations were actually violated, only that [he] had a good faith belief that the regulations were being violated." (Doc. # 17, at 5).

Plaintiff's position is supported by the Tennessee Supreme Court's decision in *Mason v. Seaton*, in which the court held that the Whistleblower Act does not require the claimant to show that defendant actually violated the law, regulation, or rule at issue. 942 S.W.2d 470, 472 (Tenn. 1997). As the court explained, "[t]he statute's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it." *Id.* (citing *Melchi v. Burns Int'l Security Services, Inc.*, 597 F. Supp. 575, 583 (E.D. Mich. 1984)). The Act therefore does

6

not require Plaintiff to persuade the fact-finder that he was the Pilot in Command or that Defendants violated FAA safety regulations.  It only requires him to demonstrate that he had "reasonable cause to believe" that Defendants violated FAA safety regulations.  *Mason*, 942 S.W.2d at 472; *see also Sykes v. Chattanooga Housing Authority*, No. E2008-00525-COA-R3-CV, 2009 WL 2365705, at *13 (Tenn. Ct. App. July 31, 2009) (citing *Mason* and holding that under the Act "[t]he plaintiffs do not have the burden of proving that the actions they complained of were conclusively illegal. Rather, it is sufficient if they had reasonable cause to believe that illegal conduct had occurred or would occur and reported it in good faith.").  Whether Defendants actually violated the FAA regulations is thus not an essential element of Plaintiff's claims.  This suggests that no substantial federal issue at stake.

The Sixth Circuit's opinion in *Eastman* is instructive.  In that case, the plaintiff filed a state law claim in Ohio for wrongful discharge in violation of public policy.  438 F.3d at 548.  He alleged that the relevant public policy was manifested in two federal statutes prohibiting the submission of false or fraudulent claims to the military or the federal government.  *Id.*  The Sixth Circuit held that the complaint did not present a substantial federal question for several reasons.  First, it held that the "meaning" of the federal statutes on which the plaintiff relied were not in "serious dispute."  *Id.* at 552.  As the court explained, "[i]t can hardly be disputed that submitting fraudulent claims to the federal government would contravene national policy."  *Id.*  Second, the court found it highly significant that Congress had withheld a private right of action for redress of the cited statutes.  *Id.*  This fact signaled Congress's view that the federal question involved was not substantial.  *Id.*  Third and finally, the court found that the balance of federal and state

7

judicial responsibilities would be "upset drastically if state public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy." *Id.* at 553. It grounded this holding in part upon its understanding that the majority of employment litigation is handled by state courts. *Id.* The court therefore held that "a state-law employment action for wrongful termination in violation of federal public policy does not present a substantial federal question over which federal courts may exercise 'arising under' jurisdiction under 28 U.S.C. § 1331." *Id.*

The same is true here. First, there can be no serious dispute regarding the meaning of 14 C.F.R. § 91.13(a), which prohibits all persons from "operat[ing] an aircraft in a careless or reckless manner so as to endanger the life or property of another." It cannot be seriously maintained that one *may* operate an aircraft in a careless or reckless manner. The meaning of this regulation is thus not truly at issue. Defendants argue, however, that the meaning of the term "Pilot in Command" as used in 14 C.F.R. § 91.3(a) and 14 C.F.R. § 91.3 103 is disputed because the parties disagree as to whether Plaintiff was actually the Pilot in Command as defined by federal law on September 26, 2011. Defendants thus frame this action as if Plaintiff's right to relief is contingent upon him proving that he was the Pilot in Command on that date. It is not. The complaint alleges that Plaintiff reported various safety violations on different dates, including the inoperable fuel gauge, the failed lift dump system, and the short runway in Canandaigua, and that he was fired in retaliation for making these complaints. He may thus prevail on his state law claims by showing that he had reasonable cause to believe that Defendants were permitting their aircraft to be operated carelessly or recklessly, or that they wanted him to operate an aircraft in that fashion, in violation of 14 C.F.R. § 91.13(a). Whether or not he was the Pilot in Command,

8

as defined in 14 C.F.R. § 91.3(a) and 14 C.F.R. § 91.3 103, at any relevant time is thus not an essential element of his Whistleblower Act claim or his common law claim.

Second, Defendant has not pointed the Court to any federal cause of action for redress of 14 C.F.R. § 91.13(a). The lack of such a cause of action indicates that Congress does not view this regulation as embodying a substantial federal question. Third, as in *Eastman*, permitting "arising under" jurisdiction in this case simply because Plaintiff cites federal law as the public policy undergirding his wrongful termination claim would upset the balance of federal and state judicial responsibilities.

This case is unlike *City of Tipp City v. City of Dayton*, 204 F.R.D. 388 (S.D. Ohio 2001) and *Grable & Sons*, cited by Defendants. In *City of Tipp City*, the plaintiffs brought a state law nuisance claim alleging that the defendant violated FAA orders requiring that "certain flights follow specifically designed flight corridors designed to limit noise and other pollution." *Id.* at 395. The district court held that the nuisance claim arose under federal law because it was "premised on the [defendant's] failure to comply with FAA requirements." *Id.* at 395-96. In other words, the defendant's failure to comply with the FAA orders was an essential element of the plaintiffs' cause of action. Likewise, in *Grable & Sons*, the Supreme Court held that federal question jurisdiction existed because the question of whether the plaintiff was given adequate notice within the meaning of a federal statute was an essential element of his state law quiet title claim. 545 U.S. at 314-15. Here, by contrast, the FAA regulations cited in Plaintiff's Amended and Restated Complaint are simply not essential elements of his claims because, as already explained, Plaintiff need only prove that he had "reasonable cause to believe" that Defendants violated the regulations.

9

The Court thus finds, in accord with *Eastman*, that "a state-law employment action for wrongful termination in violation of federal public policy does not present a substantial federal question over which federal courts may exercise 'arising under' jurisdiction under 28 U.S.C. § 1331." *Eastman*, 438 F.3d at 553. The Court now turns to Defendants' preemption argument.

Under the complete-preemption doctrine, "removal is proper 'when a federal statute wholly displaces the state-law cause of action through complete pre-emption.'" *Mikulski*, 501 F.3d at 560 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8). Absent complete preemption, the pre-emptive effect of a federal statute constitutes a defense—not a basis for removal. *Mikulski*, 501 F.3d at 560. The Sixth Circuit has explained the doctrine in detail as follows:

> The complete-preemption doctrine applies in circumstances in which Congress may intend the preemptive force of a federal statute to be so extraordinary that any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. The Supreme Court has found complete preemption in only three classes of cases: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975 (ERISA), 29 U.S.C. §§ 1001-1461; and the National Bank Act, 12 U.S.C. § 38. Complete preemption requires a finding that the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.

*Mikulski*, 501 F.3d at 563-64 (internal citation and quotation omitted).

Defendants argue that the Federal Aviation Act, 49 U.S.C. § 40101, *et seq.*, preempts "all state law regulation of aviation safety," including Plaintiffs' Whistleblower Act and common law claims. (Doc. # 13, at 1, 6). Of course, there are many types of preemption. Defendants never argue that the *complete-preemption doctrine* applies, nor do they even use that term, cite authority on the doctrine, or show how the doctrine applies

10

to this case. Moreover, two of the three cases they cite in support of their preemption argument did not involve complete preemption or motions to remand. *See Botz v. Omni Air Int'l*, 286 F.3d 488 (8th Cir. 2002) (holding on motion to dismiss that the Airline Deregulation Act and the Whistleblower Protection Program expressly preempted the plaintiff's state whistleblower claim); *French v. Pam Am Express*, 869 F.2d 1 (1st Cir. 1989) (holding on motion for judgment on the pleadings that the FAA preempted a state statute regarding drug testing of employees as applied to pilots by occupying the field of pilot regulation related to air safety).

The third case Defendants cite, *Curtin v. Port Authority of New York*, 183 F.Supp.2d 664, 666 (S.D.N.Y. 2002), ostensibly supports their preemption argument; however, a closer review reveals that *Curtin*'s reasoning is unreliable. In *Curtin*, the plaintiff, an airline passenger, brought a state law negligence action against Delta Air Lines and the Port Authority of New York and New Jersey for injuries he sustained during an emergency evacuation of a Delta Flight at LaGuardia Airport. *Id.* at 666. The plaintiff did not cite any specific federal statute or regulation as the basis for his claims. *Id.* Defendants removed the case to federal court arguing that the FAA implicitly preempted state law standards regarding aviation safety, and the plaintiff filed a motion for remand. *Id.* The district court denied the motion, holding that the action presented a federal question because "[t]he comprehensive federal regulatory scheme covering emergency evacuation procedures, the manifest purpose of the FAA to ensure safety, and the legislative history all favor finding that the standard of care [for the plaintiff's negligence claim] is a matter of federal, not state, law." *Id.* at 671. This passage makes it sound as though the court intended to rest its holding on the complete-preemption doctrine. But the court never mentioned the doctrine,

11

never cited cases discussing the doctrine, and never purported to apply the doctrine. In fact, it never explained what type of preemption it was applying. However, judging by the cases it relied on, such as *French*, it appears that the court applied ordinary preemption. The court thus appears to have incorrectly assumed that ordinary preemption supports federal question jurisdiction. This Court is not alone in that assessment. Another district court which has since discussed *Curtin* came to the same conclusion. The District Court for the Eastern District of Kentucky noted the same defects in the *Curtin* court's reasoning, and held that "[t]his Court respectfully disagrees with *Curtin* to the extent it holds that removal jurisdiction directly follows from ordinary preemption." *In re Crash at Lexington, Kentucky, August 27, 2007*, 486 F. Supp. 2d 640, 652 (E.D. Ky. 2007). The Court concurs; *Curtin*'s reliance on ordinary preemption is misplaced, and thus the Court respectfully disagrees with its holding.

In the end, Defendants bear the burden of establishing that federal question jurisdiction exists, and all doubts regarding jurisdiction are resolved in favor of remand. *Eastman*, 438 F.3d at 549-50. They have not met this burden because they have not established that complete preemption applies to this action. Accordingly, their preemption argument fails.

### III. CONCLUSION

As this case does not present a substantial federal question, and as Defendants have failed to establish complete preemption, the Court will grant the instant motion and remand this action to state court. Accordingly, for the reasons stated herein,

12

**IT IS ORDERED** that

(1) Plaintiff's Motion for Remand (Doc. # 6) is hereby **GRANTED**; and

(2) This action is hereby **remanded, in its entirety,** to the Circuit Court for Knox County, Tennessee, from which it was removed.

This 15th day of July, 2013.



G:\DATA\Opinions\Knoxville\12-591 Order granting motion to remand.wpd